**Entered on Docket**
**April 11, 2008**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed: April 11, 2008**

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | No. 02-46284 T through 02-46286 T |
| WESTERN ASBESTOS COMPANY et al., | Chapter 11 Jointly Administered |
| Debtors.<br>_____/ | |
| HON. CHARLES RENFREW (RET.), FUTURES REPRESENTATIVE TO THE WESTERN ASBESTOS SETTLEMENT TRUST, AND THE TRUST ADVISORY COMMITTEE TO THE WESTERN ASBESTOS SETTLEMENT TRUST, | A.P. No. 07-4141 AT |
| Plaintiffs, | |
| vs. | |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, | |
| Defendant.<br>_____/ | |
| AND RELATED COUNTERCLAIM.<br>_____/ | |

**MEMORANDUM OF DECISION RE VARIOUS MOTIONS**
**REGARDING HARTFORD ACCIDENT AND INDEMNITY COMPANY'S**
**RIGHTS UNDER THE SETTLEMENT AGREEMENT**

This memorandum of decision addresses: (1) the motion filed by Hartford Accident and Indemnity Company ("Hartford") in the above-captioned main cases to enforce the terms of its settlement agreement (the "Settlement Agreement") with the above-captioned debtors (the "Debtors")(referred to hereinafter as the "Enforcement Motion"), (2) Hartford's motion in the above-captioned adversary proceeding for judgment in its favor on the pleadings or for summary judgment (the "Summary Judgment Motion"), and (3) the countermotion filed by the Trust Advisory Committee (the "TAC") and Futures Representative (the "Futures Representative") (collectively the "Trust Parties")[1] for partial summary judgment[2] (the "Summary Judgment Countermotion"). For the reasons stated below, the Court denies Hartford's Enforcement and Summary Judgment Motions and grants the Trust Parties' Summary Judgment Countermotion.

### SUMMARY OF FACTS

The above-captioned adversary proceeding is related to the Debtors' jointly administered chapter 11 cases. The cases were filed in 2002. Their purpose was to seek confirmation of a plan to establish an asbestos claimants' trust (the "Trust") funded by a settlement with an insurance company with which the debtors, or some of them, had been in coverage litigation for a number of years.

---

[1]The Plan provided for a Trust Advisory Committee (the "TAC") and a Futures Representative (the "Futures Representative") to oversee the operations of asbestos claimants' trust established pursuant to a reorganization plan confirmed in the above-captioned cases.

[2]The Trust Parties do not seek summary judgment on their second claim for relief, seeking a preliminary injunction.

2

Other insurance companies, who also disputed coverage of the Debtors'
liability for asbestos claims and which had not settled with the
Debtors, objected to confirmation. The most vocal of the objectors
was Hartford.

After the bankruptcy court confirmed the Debtors' plan (the
"Plan") over Hartford's objection and issued a channeling injunction,
but before the required hearing before the district court seeking
affirmation of the injunction, the Debtors and Hartford entered into
a settlement agreement (the "Settlement Agreement"). The Settlement
Agreement required Hartford to pay $1.15 billion to the Trust. It
gave Hartford the right to "review and/or audit" the Trust and the
Trust payments although it expressly denied Hartford the right to
challenge any of the payments. The Settlement Agreement was approved
by the Court in April 2004.

In March 2007, Hartford informed the TAC that it would like
exercise its "review and/or audit" rights. It suggested that it
begin by gaining electronic access to any claims submitted
electronically and to the Trust's databases reflecting allowance and
payment of claims. The TAC agreed to grant Hartford this access
provided Hartford signed a confidentiality agreement prohibiting
Hartford from using any of the information obtained thereby for
purposes unrelated to the Trust. Hartford refused to sign such an
agreement. It contended that it was entitled to use the information
obtained in this fashion for any purpose. Given Hartford's response,
the TAC refused to give Hartford any access to the Trust documents.

In July 2007, Hartford filed a motion to enforce the terms of

3

the Settlement Agreement. Shortly thereafter, the TAC filed a countermotion for a determination that the stipulated temporary protective orders previously signed by Hartford imposed the desired restrictions on Hartford's use of the information or, alternatively, for a new protective order that would do so. The countermotion was supported by, among other things, the Declaration of David McClain ("McClain"), counsel for the Official Unsecured Creditors' Committee during the chapter 11 cases and now a member of the TAC.

McClain was one of the principal attorneys representing the asbestos claimants during the negotiation of the Settlement Agreement. In his declaration, McClain stated that he "specifically told Hartford's representatives in the settlement negotiations that...[he] would not agree that Hartford could use individual claimant submissions to the Trust for purposes other than those connected to the Trust." He stated further in his declaration that "No representative of Hartford ever suggested during the negotiations for the Hartford Settlement Agreement that the review and audit provision was so intended." McClain Declaration, para. 14.

The Court heard the motions on August 20, 2007. At the conclusion of the hearing, the Court held that the stipulated protective order was no longer in effect and that an adversary proceeding was required for the new protective order sought by the TAC. It took the Enforcement Motion under submission and directed the parties to participate in a judicially supervised settlement conference. Shortly thereafter, the TAC and the Futures

4

Representative filed a complaint initiating this adversary proceeding, seeking declaratory and injunctive relief.[3]

After an extended period, the parties and the settlement judge concluded that settlement was not feasible. Thereafter, Hartford filed the Summary Judgment Motion and the Trust Parties filed the Summary Judgment Countermotion. The motions came on for hearing on March 31, 2008 and, at the conclusion of the hearing, were taken under submission.

### APPLICABLE LEGAL STANDARDS

A party may move for judgment on the pleadings after the pleadings are closed and without delaying trial. Fed. R. Civ. P. 12(c)(made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012(b)). Judgment on the pleadings is appropriate when the moving party establishes that, even if all of the well-pleaded factual allegations in the complaint are assumed to be true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998). A motion for judgment on the pleadings is properly treated as a motion for summary judgment when the court looks beyond the pleadings to resolve the matter. Fed. R. Civ. P. 12(d) (2008)[4](made applicable in bankruptcy by Fed. R. Bankr. P.

---

[3]A motion filed by the Trust to intervene in the adversary proceeding was granted in October 2007. Thus, reference to the Trust Parties should be understood to include a reference to the Trust unless the context indicates otherwise.
[4]Effective December 1, 2007, Federal Rule of Civil Procedure 12 was amended, moving language formerly in subsection (c) to a separate subsection (d). The language was moved only as a stylistic change. Fed. R. Civ. P. 12 Advisory Committee Note.

5

7012(b)); see also Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1990).

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(made applicable in bankruptcy cases by Fed. R. Bankr. P. 7056). If the moving party demonstrates an absence of genuine issue of material fact with affirmative evidence or establishes an absence of evidence to support the nonmoving party's case it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the moving party satisfies its burden, the non-moving party must set forth specific facts demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e)(2)(made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If the Court is unable to resolve the entire matter by summary judgment, the Court may summarily adjudicate any portion of the claim as to which there is no genuine factual issue. Fed. R. Civ. P. 56(d) (made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056).

Under applicable California contract law, whether a contract term is ambiguous is a question of law. See Wolf v. Superior Court, 114 Cal. App.4ᵗʰ 1343, 1350-51, as modified on denial of reh'q (2004). If a term is found to be ambiguous, the meaning of the ambiguous term is a question of law if no extrinsic evidence has been introduced or if extrinsic evidence is not in conflict. Curry v. Moody, 40 Cal. App. 4ᵗʰ 1547, 1553 (1995). A factual question exists only when the

6

meaning of the contract term requires a credibility determination to resolve conflicting evidence introduced by the parties. <u>American Alternative Ins. Corp. v. Superior Court</u>, 135 Cal. App. 4th 1239, 1244-45 (2006).

Under California law, a court must construe an agreement in a fashion that gives effect to the mutual intention of the parties to the agreement. Cal. Civ. Code § 1636. The parties' objective mutual intent is to be inferred, if possible, solely from the written provisions of the agreement. Cal. Civ. Code § 1639. However, even if a written provision appears clear on its face or from the four corners of the document, a court must consider all credible extrinsic evidence to determine whether a latent ambiguity exists. <u>Appleton v. Waessil</u>, 27 Cal. App. 4th 551, 554-55 (1994).

If this process persuades the court that the provision is ambiguous, extrinsic evidence must then may be considered to determine its proper meaning. In making that determination, the court must select the interpretation that is most reasonable and consistent with the parties' objective mutual intent, based the outward manifestation or expression of their intent. Cal. Civ. Code § 1643; <u>Ben-Zvi v. Edmar Co.</u>, 40 Cal. App. 4th 468, 472-73 (1995). Silence may be treated as acceptance of a term where the circumstances establish a duty to speak. <u>Golden Eagle Ins. Co. v. Foremost Ins. Co.</u>, 20 Cal. App. 4th 1372, 1386-87 (1993).

To obtain a permanent injunction, the plaintiff must establish that there is a likelihood of substantial and immediate irreparable injury and that remedies at law, such as damages, are inadequate.

7

See <u>American-Arab Anti-Discrimination Comm. v. Reno</u>, 70 F.3d 1045, 1066-67 (9th Cir. 1995); <u>LaDuke v. Nelson</u>, 762 F.2d 1318, 1330 (9th Cir. 1985). Irreparable injury consists of a harm that cannot be repaired. <u>Studebaker Corp. V. Gittlin</u>, 360 F.2d 692, 698 (2d Cir. 1966).

**DISCUSSION**

**A.  DECLARATORY RELIEF**

 **1.  Summary of Evidence and Argument**

  The three motions described above all present the same issues and arguments.  Hartford contends that the meaning of "review and/or audit" as used in the Settlement Agreement is plain and unambiguous and that no extrinsic evidence should be considered to determine its meaning.  It asserts that the right to "review and/or audit" the Trust and the Trust payments not only gives it the right to inspect all of the Trust documents but also to obtain copies of them and to use the information contained in them for purposes unrelated to the Trust.

  Hartford reasons that, given the number of transactions involved, it would be unreasonable to expect Hartford to review all of the documents on site.  Necessarily, it is entitled to obtain copies so that it may review them at its leisure in its own business location.  Hartford reasons further that, once it has the information contained in those documents, it is free to use the information for whatever purposes it desires since the Settlement Agreement does not prohibit it from doing so.  It notes that the Settlement Agreement does expressly prohibit the use of the information contained in the

8

documents to challenge the Trust payments. The inclusion of this one express prohibition, Hartford argues, necessarily indicates that no other use is prohibited.

Hartford also notes that section 12.1 of the Settlement Agreement contains an integration clause which provides that the written terms of the Agreement supersede any prior communications or oral agreements. It points out that section 25 of the Settlement Agreement prohibits the admission of evidence of negotiations to establish the right and/or obligations of the parties.

Finally, Hartford contends that most of the information contained in the Trust documents is not confidential. In support of this contention, it cites Volkswagen of America, Inc. v. Superior Court, 139 Cal. App. 4th 1481, 1488 (2006) and Seariver Martiime, Inc. v. Superior Court, 2006 WL 2105431 *3 (Cal. Ct. App. July 28, 2006)(unpublished disposition).

The Trust Parties' rationale follows a different path. To begin with, they contend that much of the information contained in the claims forms is sensitive and confidential. In support of this contention, they offer the declaration of Sara Beth Brown ("Brown"), the Executive Director of the Trust. Her declaration describes some of the personal and sensitive information included in some of the claim forms, such as references to drug and alcohol abuse and HIV status. The Trust Parties also argue that even information concerning the amount of payments made to a particular claimant is sensitive and confidential. They note that many of the claimants are

9

elderly and that public disclosure that they are the recipients of large sums of money could render them vulnerable to elder abuse.

The Trust Parties state that <u>Volkswagen</u> and <u>Seariver</u> are distinguishable in that those cases involved defendants' rights to discover information concerning the very claims being asserted against them. However, the Trust Parties contend that this issue is irrelevant. Regardless of whether the information is confidential, the Trust Parties argue, Hartford's "review and/or audit" rights do not give it the right to use the information obtained thereby for purposes unrelated to the Trust.

Next, the Trust Parties contend that the meaning of "review and/or audit" is ambiguous. They note that, even if a phrase appears to have a plain meaning on its face, extrinsic evidence may be considered to establish that, as used in context, it has a special meaning as long as the language is reasonably susceptible to the special meaning.

The Trust Parties also note that section 25, prohibiting the admission of evidence concerning the settlement negotiations contains an exception for actions to enforce the terms of the Settlement Agreement.[5] They assert that Hartford's reliance on the integration clause contained in section 12.1 of the Settlement Agreement misses the point. Even when a contract is integrated, the meaning of the

_____

[5]At the hearing on the motions, the Trust Parties argued that the exception in section 25 for actions to enforce the terms of the Settlement Agreement made any evidence concerning the negotiations automatically admissible. The Court does not find this argument persuasive.

10

terms of the contract must still be determined.  See Morey v. Vannucci, 64 Cal. App. 4th 904, 913, n.4 (1998).

Further, when the extrinsic evidence is considered, the Trust Parties argue, it becomes clear that, in this context, Hartford's "review and/or audit" rights are limited to use of the information obtained thereby to purposes related to the Trust.  The extrinsic evidence referred to consists primarily of the declarations of Alan Brayton ("Brayton")[6] the other principal attorney representing the Trust Parties in the settlement negotiations, McClain, Brown ("Brown"), and Dan Guy ("Guy").

Guy is offered as an expert witness on audit procedures and standards.  In his declaration, Guy explains that he is a certified public accountant and an expert on standards applicable to the conduct of an audit.  Guy notes that, from the perspective of a certified public accountant, Hartford's right to review and/or audit the Trust and the Trust payments gives it the right only to review

---

[6]At the hearing on the motions, the Court questioned why Brayton's declaration was submitted as evidence of what McClain had said during the negotiations and why the recipient of the statement on behalf of Hartford was not named.  The Trust Parties explained that McClain had been absent from the United States when the declaration was submitted and, in any event, his declaration, containing this same statement, had been submitted in the main case at an earlier date.  The Court was advised that the recipient of the statement was William Bowman ("Bowman"), the attorney representing Hartford at the hearing on the motions and that he had not been named out of sensitivity to the fact that Bowman was Hartford's lead counsel.  Bowman did not deny this assertion.  Based on the foregoing, the Court is satisfied that the evidence presented is sufficient to establish a prima facie case that the statement was made by McClain to Bowman during settlement negotiations.

11

the Trust financial statements and any underlying documents pertaining to entries in the financial statements.

Moreover, Guy notes that Rule 301 of the AICPA Code of Profession Ethics prohibits an auditor from disclosing or using to its advantage any confidential information without the Trust's consent. Although the Settlement Agreement does not require that Hartford use a CPA to conduct any audit, according to Guy, anyone else performing an audit would presumably adhere to the ethical standards established by the AICPA.

In his declaration, Brayton explains that the settlement negotiations began with a term sheet. The term sheet was amended twice and then signed. In all three term sheets, the "review and/or audit" right appeared in the same paragraph as the requirement that all of the payments made by Hartford be used either to pay claims or in connection with the claims. Only in the Settlement Agreement, which was prepared by Hartford, did the "review and/or audit" right appear in a separate paragraph. Hartford never informed the Trust Parties that the change in location of this provision was intended to have any significance.

As stated in McClain's declaration and as reiterated in Brayton's declaration, during the negotiations, McClain told Bowman that Hartford could not use any of the information contained in the Trust documents for purposes unrelated to the Trust. Both Brayton and McClain declare that Bowman told them that Hartford needed the information for purposes of reinsurance.

12

In reply, Bowman admits telling Brayton and McClain that Hartford needed the right to review and/or audit the Trust and Trust Payments for purposes of reinsurance but asserts that he never told them that this was the <u>sole</u> purpose for the provision. Bowman admits never telling Brayton and McClain that Hartford wanted the right to use and disseminate information obtained through a review and/or audit of the Trust for purposes unrelated to the Trust. At the hearing, Bowman declined to either admit or deny that during negotiations McClain told him that Hartford could not use the information for purposes unrelated to the Trust. Instead, he argues that this is irrelevant since Hartford never affirmatively agreed to any such limitation.

Hartford offers the declaration of Michael Ceppi ("Ceppi") to rebut the expert testimony of Guy. Ceppi identifies himself as the President of a company that provides independent audit services. Ceppi states that he has twenty years of experience in the insurance industry. Based on this experience, he declares that an audit would not normally be understood to be limited to an examination of an entity's financial statements nor would it be conducted with reference to professional standards specifically applicable to CPAs.

Ceppi declares further that, since most audits require the review of voluminous documents, it is commonly understood that an insurer conducting a review and/or audit has the right to make extracts and copies of the documents being reviewed and to maintain those documents for as long as necessary to complete its study. Finally, he declares that, since the entity is not the client of the

13

auditor, there is no client relationship that creates a duty of confidentiality to the entity that is the subject of the audit.

## 2. Decision

The parties agree that resolution of this dispute turns on the meaning of "review and/or audit" as used in section 14.1 of the Settlement Agreement. Section 14.1 provides as follows:

> **XIV. AUDIT RIGHTS**
> Hartford shall have the right, at its own expense, upon reasonable notice, at a time and place convenient to the Trust, to review and/or audit the Trust and Trust payments. The Trust shall have no obligation to create any new documents in connection with any such review beyond those ordinarily created or maintained by the Trust, and Hartford shall not be permitted to challenge the allowance or payment of Claims by the Trust or any administrative payments or costs of the Trust.

Hartford contends that the meaning of the phrase "review and/or audit" as used in this section is plain and unambiguous and that no extrinsic evidence should be considered to determine its meaning. However, its rationale depends on either the application of common sense or the consideration of extrinsic evidence. Hartford contends that the phrase includes the right to obtain copies of the documents to be reviewed and/or audited. The right to obtain copies of the audit documents is not within the plain meaning of the phrase "review and/or audit." Once it is acknowledged that either common sense or extrinsic evidence is required to construe the phrase to include such a right, the process may not stop there. The same process must be applied to determine whether the "review and/or audit" right includes the right to use information obtained thereby for purposes unrelated to the audit.

14

If the Court takes a common sense approach, it would agree with Hartford that the right to "review and/or audit" also conveys the right to obtain copies of the documents to be reviewed and/or audited when the documents, as here, are voluminous. However, taking this approach, the Court agrees with the Trust Parties that the right to "review and/or audit" also limits the auditor to use of the copies and the information contained in them for purposes related to the audit. Any other conclusion would make audits few and far between. The extrinsic evidence presented by the parties brings the Court to the same two conclusions.

With respect to evidence offered by the experts, the Court finds Guy's declaration more persuasive than Ceppi's. Above all, nowhere in Ceppi's declaration does he expressly state that, in his opinion, an auditor would be free to use information obtained during an audit for purposes unrelated to the audit without the consent of the entity being audited. Thus, the Court is persuaded that the most reasonable construction of the phrase "review and/or audit" would not give the auditor the right to such a use.

The Court is also persuaded by the undisputed evidence concerning the communications between the parties during the settlement negotiations that the manifested understanding of the parties was that the information obtained through the audit could not be used for purposes unrelated to the audit. As noted above, no evidence has been presented to contradict McClain's sworn statement that he told Bowman during the negotiations that he would not agree that the information contained in the Trust documents could be used

15

for purposes unrelated to the Trust. Similarly, no evidence has been presented to contradict Brayton's and McClain's statement that no one acting on behalf of Hartford ever expressed any disagreement with such a limitation. The Court concludes that these communications alone were sufficient to impose a limitation on Hartford's use of the information. Under the circumstances, Bowman had a duty to speak up if he would not agree to it. Moreover, Bowman admits having told Brayton and McClain that he needed the "review and/or audit" right for purposes of reinsurance. His failure to specify that this was not his sole purpose for wanting the right to "review and/or audit" the Trust was insufficient to satisfy that duty.

Hartford argues that the prohibition on the use of the information contained in the Trust documents to challenge the Trust payments indicates that no other limitation on its use was intended. The Court finds this argument unpersuasive. One might just as easily argue that the Trust's right to designate the time and the place of the review and/or audit gives the Trust the right to insist that the review and/or audit be conducted on the business premises of the Trust and that no copies or notes be taken off those premises. However, the Court believes that neither provision was within the expressed intention of the parties to the Settlement Agreement. As indicated above, the Court concludes that the expressed intention of the parties was that Hartford could obtain copies of the Trust documents, if needed to conduct the audit for purposes related to the Trust, but that Hartford could not use the information contained in the Trust documents for unrelated purposes.

Finally, the Court also agrees with the Trust parties that much of the information contained in the claims forms is confidential. The cases cited by Hartford for the contrary proposition are clearly distinguishable. In <u>Volkswagen</u>, the information sought by the defendant through discovery concerned a claim for damages being asserted against it.[7] It would be unreasonable for a plaintiff to be permitted to assert damages against a third party and at the same time to withhold evidence that might relate to his claim. In the instant case, the information sought by Hartford has no bearing on a claim of damages being asserted against it, either directly or as the insurer of a third party. If it did, Hartford could seek the information in question through discovery in the case in which the claim was to be litigated.[8]

However, the confidential nature of much of the information does underline the unreasonableness of Hartford's quest. Hartford argues that it has a legitimate need for the information. It is involved in other bankruptcy cases in which claims are being asserted against its insureds by the same claimants submitting claims to the Trust. Some of the claims submitted to the Trust may contain inconsistent information.

---

[7]<u>Seariver</u> involved facts virtually identical to <u>Volkswagen</u> and the <u>Seariver</u> cited <u>Volkswagen</u> with approval, agreeing with its conclusions. <u>Seariver</u> at *3-4.

[8]However, the Court agrees with the Trust Parties that the confidential nature of the information is not determinative. Absent extrinsic evidence of a contrary intention or an express agreement to the contrary, the Court concludes that the right to "review and/or audit" the records of a company does not give the auditor the right to use the information obtained for its own purposes.

17

The problem with Hartford's solution for dealing with its problem is that, to combat it, Hartford seeks access to the confidential information of many claimants who are not submitting claims in other bankruptcy cases or to other trusts. Moreover, Hartford has other, more narrowly tailored means to accomplish its purpose. Hartford can seek discovery from the claimants in the other bankruptcy cases or even third party discovery against the Trust regarding the claimants in those other cases. At that point, any protective measures deemed appropriate may be considered by the court.

**B.  PERMANENT INJUNCTION**

In their third claim for relief, the Trust Parties seek to enjoin Hartford permanently from: (1) obtaining access to the Trust claimants' nonpublic personal, medical and claimant specific information, (2) using any of the information obtained from any audit permitted beyond these bankruptcy cases, and (3) disclosure of any such information beyond any disclosure that would have been permitted pursuant to stipulated protective orders previously executed by the parties. They contend that the injunction is essential to protect the Trust beneficiaries from irreparable injury, consisting primarily of an invasion of their privacy, a constitutionally protected right.

Hartford contends that the Trust Parties have not established the right to an injunction. To begin with, it contends that the restrictions that the Trust Parties seek to place on their "review and/or audit" rights would make any such rights meaningless. In essence, they seek to restrict Hartford to a review and audit of the

18

Trust's aggregate financial data. Hartford argues that this restriction is inconsistent with the terms of the previous stipulated protective orders which did give Hartford access to claimant specific information. Moreover, it contends, the restriction is contrary to the plain language of the Settlement Agreement and any reasonable construction of the phrase "review and/or audit."

The Trust Parties' response assumes that the Court will grant their motion for partial summary judgment on the first claim for relief. Thus, the likelihood of success on the merits requirement for a permanent injunction will be satisfied. With respect to the irreparable injury requirement, they cite Nelson v. Nat. Aeronautics & Space Admin., 512 F.3d 1134, 1144 (9th Cir. 2008) for the proposition that, unlike monetary injuries, constitutional violations can never be adequately remedied by an award of damages. Therefore, they necessarily present a threat of irreparable injury. The invasion of the claimants' privacy clearly constitutes a constitutional violation.

As discussed above, the Court concludes that the Trust Parties are entitled to partial summary judgment on their first claim for relief, for declaratory judgment. The Court is also persuaded that Hartford's threatened use of the claimants' private information for purposes unrelated to the Trust threatens irreparable injury, therefore warranting the issuance of a permanent injunction. The only remaining question is whether the scope of the permanent injunction proposed by the Trust Parties is too broad.

19

The Court is persuaded that the scope of the injunction proposed by the Trust Parties is too broad. The Court construes the review and/or audit rights granted to Hartford by the Settlement Agreement to give Hartford access to claimant specific information. Hartford had such access during the active phase of the bankruptcy cases pursuant to the terms of a stipulated protective order. Initially, the Trust Parties were willing to give Hartford access to claimant specific information provided they sign a new stipulated protective order. The terms of the Court's permanent injunction should mirror the restrictions placed on the use of the information set forth in the stipulated protective orders.

## CONCLUSION

Hartford's Enforcement and Summary Judgment Motions will be denied, and the Trust Parties' Motion for Partial Summary Judgment will be granted. The phrase "review and/or audit" as contained in section 14.1 of the Settlement Agreement is ambiguous. Considering the extrinsic evidence presented by the parties, the Court concludes that the parties' expressed understanding of the meaning of the phrase gives Hartford the right to obtain copies of any Trust documents to the extent necessary to perform the audit but does not permit Hartford to use the information obtained through the audit for its own purposes or to disclose that information to third parties.

The Court will grant the Trust Parties request for a permanent injunction, having concluded that the Trust Parties have prevailed on the merits and that there is a threat of irreparable injury if the

20

permanent injunction does not issue.  However, the scope of the injunction proposed by the Trust Parties is too broad and should instead mirror the limitations on the use and disclosure of the information set forth in the stipulated protective orders executed during the active phase of the cases.

Counsel for the Trust Parties is directed to submit a proposed order in accordance with this decision.  If the order provides for the dismissal of the second claim for relief, the Trust Parties may also submit a proposed form of judgment.  Pending entry of any such judgment, the proceeding is hereby scheduled for a status conference on July 17, 2008 at 11:00 a.m.

END OF DOCUMENT

21

COURT SERVICE LIST

Steven B. Sacks
Sheppard, Mullin, Richter and Hampton
4 Embarcadero Center 17th Fl.
San Francisco, CA 94111

Gary S. Fergus
Fergus Law Firm
595 Market St. #2430
San Francisco, CA 94105

Janet L. Chubb
Law Offices of Jones Vargas
100 W Liberty St. 12th Fl.
P.O. Box 281
Reno, NV 89504

William J. Bowman
Hogan and Hartson LLP
555 13th St. N.W.
Washington, DC 20004

22