Entered on Docket
July 27, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: July 27, 2010**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                           No. 02-46284 T
                                                Chapter 11
WESTERN ASBESTOS COMPANY,

        Debtor.
_____/

**MEMORANDUM OF DECISION RE MOTION TO APPROVE AND SETTLE WESTERN ASBESTOS SETTLEMENT TRUST'S SIXTH ANNUAL REPORT AND ACCOUNTING**

The motion (the "Motion") to approve and settle the Sixth Annual Report and Accounting, Audited Financial Statements, and Claim Report (the "Sixth Annual Report and Accounting"), filed by the Trustees of the Western Asbestos Settlement Trust (the "Trust" and the "Trustees," respectively) came on for hearing on June 15, 2010. The Trustees appeared through counsel. No objections were filed with respect to the motion. However, Michael J. McDermott ("McDermott"), a Trust beneficiary, appeared at the hearing, pro se, and expressed dissatisfaction with the way the Trust was being operated. The Court directed McDermott to file and serve a written statement of his complaints (the "McDermott Statement") and gave the Trustees a

deadline for responding to it. The hearing was continued pending the Court's review of these filings.

## THE McDERMOTT STATEMENT

McDermott's first complaint was that both the Trust and the attorneys (by which he apparently means both the Trust's attorneys and the beneficiaries' attorneys) had failed to explain adequately to them, in terms understandable by a lay person, how the Trust operates, its life span, and what they may expect to receive from it and when. McDermott noted that clear information on these issues may be important to the beneficiaries for tax and estate planning purposes.

McDermott's second complaint was that, although the beneficiaries apparently will not receive full payment of their claims, other people who are not beneficiaries appear to be making a lot of money administering and working for the Trust. McDermott suggested that these jobs could have gone to beneficiaries. He suggested that anyone administering or working for the Trust has an inherent conflict of interest in that they have an incentive not to terminate the Trust. He argued that this inherent conflict of interest demanded more transparency and full disclosure to beneficiaries with respect to the operation of the Trust.

McDermott's third complaint was that the costs shown on the Trust's balance sheets were not broken down in a manner that was useful for an unsophisticated beneficiary. He suggested that the children of the beneficiaries could be given jobs for the Trust before the money runs out.

2

McDermott's fourth complaint was that, although the legal fees paid by the Trust run into many millions of dollars, there does not appear to be any breakdown of what was paid for and at what rate. He contended that the beneficiaries are paying for two sets of attorneys: the attorneys who represented them initially and those representing the Trust. Yet, the beneficiaries are not even told what hourly rates are being charged for these legal services. He complained that the beneficiaries' own attorneys are being paid 25% of the distributions for doing nothing but redistributing the payouts once every few years. He stated that he found it insulting and called it "double dipping" that, in addition, the attorneys representing the Trust are also being paid legal fees. He described this as a long term windfall for law firms.

Finally, he asked the Court to investigate what could be done to see that the beneficiaries of the Trust receive the maximum benefit from the Trust, including employment where practicable. He reiterated his desire for information about when the Trust would be resolved so that beneficiaries who will not receive a full payout may at least receive a tax benefit during their own lifetimes.

## THE TRUSTEES' RESPONSE

Preliminarily, the Trustees noted that McDermott's complaints do not appear to be an objection to the motion to approve and settle the Sixth Annual Report and Accounting. Nevertheless, they undertook to respond to McDermott's complaints and questions about the operation of the Trust.

3

With respect to McDermott's first complaint, about the lack of clear communication concerning the operation and anticipated life span of the Trust, the Trustees attempted to provide the relevant information so as to remedy this perceived lack. They explained the purpose of the Trust and cited the law that governed its creation. They explain that, because it is uncertain when all diseases caused by exposure to asbestos will be discovered, the life span of the Trust cannot be predicted with certainty. However, according to the experts who testified in connection with the creation of the Trust, the Trust is expected to continue for 40 to 50 years from its inception.

The Trustees explained that the Trust will terminate ninety days after all claims submitted have been paid or disallowed, there have been twelve consecutive months during which no new asbestos claims have been filed, and the Trustees determine that it is unlikely that any new claims will be submitted. If all claims have been paid in full and the expenses of the Trust have been paid, any money remaining is required to be paid to a charitable organization which, if practicable, is dedicated to research regarding or treatment of asbestos related diseases.

The Trustees explained that the law governing the Trust requires reasonable assurances that all claimants, including claimants whose symptoms surface in the future, receive distributions equaling substantially the same percentage of their claims. This percentage has currently been estimated to be 44%. However, the percentage payout may vary depending on the number and types of claims

4

submitted. In addition, there is still ongoing litigation from which additional Trust proceeds may be recovered. At present they are unable to predict the outcome of the litigation or how much the Trust might receive if the litigation is successful.

The Trustees stated that the recent turmoil in the financial markets has impacted somewhat the value of the Trust's assets. However, it has not to date required them to adjust the estimated percentage payout to a lower number. They noted that the estimated payment percentage is subject to periodic review at the request of the Trust Advisory Committee and/or Futures Representative. The most recent review was conducted in 2010 and resulted in an increase in the estimated percentage from 40% to 44%.

The Trustees noted that the Trust is not in a position to advise or assist beneficiaries with tax or estate planning. Some claimants have asked for information to be provided to the Internal Revenue Service to assist them in connection with their tax issues and, when possible, the Trustees have provided them with this information.

With respect to McDermott's second complaint, suggesting that the beneficiaries or their children should be employed by the Trust, the Trustees responded that this is not feasible. The Trustees noted that the Trust has fiduciary obligations to both the present beneficiaries and to future beneficiaries. There is a tension between those holding present claims and those unknown individuals who may discover in the future that they also have claims. Present beneficiaries or their children would have a conflict of interest with respect to the amount of trust assets that should be paid out

5

now as compared to being retained for the benefit of future claimants. This would preclude them from working for the Trust in a fiduciary capacity.

The Trustees responded to McDermott's suggestion that the employees and professionals working for the Trust have a conflict of interest themselves so that the Trust should have greater transparency. They noted that the Trust provides information concerning its operations, including its expenses, annually to the Court and other interested parties. Its report is posted on the Trust's website and can be compared to other similar reports filed by other asbestos trusts. If McDermott has any specific concerns about an entry in one these reports, he can raise them at any time. The Trust employs accountants and auditors that monitor the investment of trust funds, the payment of expenses, and the administration of claims. The Trust endeavors to disclose the results of financial statements in a meaningful way to beneficiaries and will continue to attempt to improve this process for greater transparency.

Finally, the Trustees took issue with McDermott's complaint that the legal fees being paid by the Trust are too high and constitute "double dipping" since their own attorneys are already receiving 25% of the distributions for doing very little at this point. They noted that the beneficiaries' attorneys represent the beneficiaries. Different attorneys are required for the various constituencies of the Trust, whose interests diverge: i.e., the Trust, the Trust Advisory Committee, and the Futures Representative. Moreover, the

6

Trustees note that the beneficiaries may have entered into agreements with their own attorneys permitting their attorneys to receive more than 25% of their distributions. The Trust restricted the beneficiaries' attorneys to retaining 25% of the distribution. The Trustees recognized the high cost of operating the Trust and, consistent with their fiduciary duty to claimants, asserted that they at all times attempt to minimize those costs. Attached to the response as Exhibit C is a list of the Trust Representatives and Professionals with their current hourly rates.

## CONCLUSION

The Court agrees with the Trustees that McDermott's complaints are not, strictly speaking, an objection to the Sixth Annual Report and Accounting. The Court also concludes that the Trustees' responses to McDermott's complaints are appropriate and adequate. The uncertainties involving the Trust and its operations and expenses incurred in its operation are unavoidable given the nature of the Trust and its various constituencies. The Trust is a complex mechanism, which must deal carefully with large sums of money for the benefit of numerous third parties with varying interests. McDermott's complaint about "double dipping" and his suggestion that the Trust should employ beneficiaries or their children are simply misguided. The Court will approve the Sixth Annual Report and Accounting and vacate the continued hearing on the motion. Counsel for the Trustees is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Michael J. McDermott
5598 Corte Sonora
Pleasanton, CA 94566

ALL RECIPIENTS